Marshall, C. J.
 

 This cause originated in the court of common pleas of Franklin county as an action hy the state to recover from the Ford Motor Company an amount claimed to be due the workmen’s compensation fund by reason of omissions of certain items of pay roll from that company’s reports to the Industrial Commission for the period from February 7, 1914, to August 7, 1917. On the theory that those items were improperly omitted, it was claimed in the petition that the Ford Motor Company owed to the fund a balance of $4,466.62. Other pleadings and demurrers were filed, and the cause was twice carried to the Court of Appeals
 
 *222
 
 and finally brought to this court on motion to certify. By the proceedings of the lower courts certain issues have been eliminated, and the issues narrowed, until the question for determination in this court relates to the sufficiency of the amended second defense of the answer.
 

 That defense sets forth the amounts paid to the operatives of the Ford Company, and the amount of premiums paid into the state fund during the period named. It contained, further, an allegation as follows:
 

 “Prior to the times named in the petition, defendant had established a system of further payments to many of its workmen and operatives, dependent upon compliance with certain requirements of defendant, which further payments were in addition to the wages which defendant contracted and agreed to pay to its workmen and operatives. The amounts of the alleged pay roll set forth in said petition are the amounts of such additional payments as made by defendant to certain of its workmen and operatives in Ohio during said time set forth in said petition.”
 

 That defense sets forth a detailed schedule of what purports to be agreed wages and of what purports to be additional payments, but a careful study and analysis of the schedule and the explanation thereof does not reveal that the additional payments were in the nature of gratuities, and if those additional payments were even of a contingent nature the contingency is not made to appear in the defense itself. Following the well-settled rule that a pleading should be construed most favorably to the pleader, the conclusion must
 
 *223
 
 still be reached that the additional payments were definitely agreed to be paid. That column of the schedule denominated “agreed wage” shows that the lowest wage paid any operative in the Ford plant was $20.64 a week, and when the additional payments were added thereto the lowest wage to any operative was $30 per week. The highest wage, as indicated by the schedule, including the “additional payments,” was $45 per week. It will therefore be seen, and the second defense specifically so alleges, that the average rate of wages paid by the company was much in excess of $18 per week for each operative. This allegation invokes a consideration of Section 1465-81, General Code (103 O. L., 86), which provides that in cases of permanent total disability the award shall be two-thirds of the average weekly wages, but not to exceed a maximum of $12 per week. It is therefore argued that as the compensation for injuries has a maximum limitation, which does not take into account wages beyond $18 per week, the premium rate should likewise take that statute into consideration.
 

 The amended second defense contains this further allegation:
 

 “The Industrial Commission did not fix rates of contributions or premiums according to the degrees of hazard of the classified occupations, and did not base its premiums on the number of employes in the classified occupations.”
 

 It contains the further allegation, in substance, that the commission classified the several occupations in which the Ford Company was engaged and fixed the rate and amount of premium to be paid by it in each of its several occupations upon
 
 *224
 
 the basis of each $100 of wages paid to its employes, without taking into consideration the number of employes. With some repetition and prolixity that defense further sets forth the claim that the commission made no distinction between employers on account of differences in the wage scale paid by different employers engaged in occupations of the same class, and no distinction on account of employers paying wages in excess of $18 per week, but that the rates of premium for each $100 of pay roll were based upon the entire amount of wages paid by the employers, without regard to the number of employes. The semiannual reports of the Ford Company, and the payments to the compensation fund based upon these reports, for the period named, show an average wage far in excess of $18 per week, and the Ford Company has never sought to escape all premiums based upon the excess over $18 per week, but only upon that portion of such excess as is denominated “additional payments.” It has already been seen that no distinction can be made under the allegations of the amended second answer between the agreed wages, so called, and the additional payments, so called. It is therefore argued by counsel for.the Ford Company that all premiums based upon wages in excess of $18 per week for each employe are illegal unless justified upon other grounds under the statute; and it is further claimed that no such grounds have been shown.
 

 It is claimed by counsel for the state that the question before this court may be stated as follows: Could the Industrial Commission at the time these premiums accrued assess the premiums against any
 
 *225
 
 part of the pay roll of any employer which represented payments in excess of $18 per week to any employe? We do not so understand the issue sought to be raised by this amended second defense.
 

 The Court of Appeals overruled the demurrer to the amended second defense, stating in its opinion that it was not as definite as it might be and that the question presented was of such importance that it was better “to have the case finally determined upon a full statement of the facts of the case, rather than upon a demurrer to the amended answer, which may or may not be a complete statement of all the facts in the case.”
 

 It should be stated at this point that we agree that the answer might be more definite and that it would be much better for the state to reply to that defense, setting forth in detail the facts which would sustain the premium rates established by the commission, and show that those rates are in compliance with the provisions of Section 1465-53, General Code, as it existed during the period covered by this controversy. Section 1465-53, (103 O. L., 74), as it stood during that period, was as follows:
 

 “The state liability board of awards shall classify occupations with respect to their degree of hazard, and determine the risks of the different classes and fix the rates of premium of the risks of the same, based upon the total pay roll and number of employes in each of said classes of occupation sufficiently large to provide an adequate fund for the compensation provided for in this act, and to maintain a state insurance fund from year to year.”
 

 In the interpretation of this section counsel for
 
 *226
 
 the Ford Company argue that the expression “pay roll and number of employes” must be taken into consideration in classifying occupations, and that the number of employes is one of the necessary elements in determining the degrees of hazard, and insist that the commission, in classifying the particular occupations in which the Ford Company is engaged, has not taken into consideration the number of employes as one of the necessary elements of the total pay roll, but in classifying the occupations in which the Ford Company is engaged, has taken the amount of the total pay roll in dollars and cents without regard to the number of employes.
 

 Inasmuch as the matter is before this court upon a demurrer to the amended second defense, the well-pleaded allegations of that defense are for the purposes of this case admitted to be true, and we must therefore take it as an established fact that, in classifying the occupations in which the Ford Company is engaged, the “total pay roll” was the total amount paid by that class of occupations to its employes without regard to the number of employes on the pay roll. It is alleged that the reports filed by the Ford Company with the commission stated the amount paid as “agreed wages,” that the wages so paid were commensurate with the prevailing rate of wages for such services by other employers in like occupations, and that the premium fates could therefore only be justified on the theory that the premiums paid by the Ford Company into the compensation fund should be calculated upon such agreed wages, and that, if the premium rate is to be calculated upon the entire
 
 *227
 
 amount of wages paid, including the “additional payments,” there should be a lower premium rate; otherwise there would be a violation of that portion of Section 1465-53 which requires that the rates of premiums must be made “with respect to their degree of hazard. ’ ’ If the Ford Company operates upon a wage scale which is 50 per cent, in excess of other employers engaged in the same occupations, then it follows as a necessary sequence that where the same amount of premium is paid by that company, and by another, it represents in the one case a very much larger number of employes than it does in the other. Manifestly the larger number of employes must cause a greater hazard. This could only be untrue in the event the plant employing the smaller number of employes has working conditions of such character as to increase the hazard of that particular employment, thereby equalizing the hazards of the two employments. It is true that Section 1465-54, General Code, provides a means of eliminating inequalities by permitting readjustments of rates based upon casualty experiences; but this fact cannot aid the state without a reply to this defense, setting forth facts which would constitute a justification.
 

 It is further claimed that Section 1465-80, General Code, operates as a justification. That section relates to payments on account of injuries to employes resulting in partial disability, and provides that where there is an impairment only of earning capacity the employes shall receive compensation amounting to two-thirds of such impairment, not exceeding a maximum of $18.75 per week, and not exceeding an aggregate sum of $3,750, such sums
 
 *228
 
 to be in addition to the compensation allowed for temporary total disability. The Ford Company answers this contention by stating that the amount paid to injured employes under that section is so insignificant as compared to the total amounts paid for workmen’s compensation that it cannot affect the result. While this is vaguely denied by the state, it is apparent that this court cannot take judicial notice of conditions upon that feature, but that the same must necessarily be set forth in a reply. It should be further stated in this connection that Section 1465-80 was amended after this cause of action accrued, and that during all of the time covered by this controversy the maximum compensation for partial disability was $12 per week. It must be apparent that the number of accidents must have some relation to the number of exposures, and that the larger number of employes, working conditions being the same, must affect the number of accidents.
 

 It is true that the pay roll is not the only matter to be considered in determining the premium rate, and that the character of the employment, and the natural hazards of the employment, must
 
 neces
 
 sarily be' the controlli2ig factor, and yet, after occupations have been classified with relation to the natural hazards, the conclusion is irresistible that under the language of Section 1465-53, as it existed during the period covered by this petition, it is required that the total pay roll cannot be considered the basis of the computation of the premiums, in utter disregard of the number of employes. To hold otherwise would require an employer paying a larger wage scale than other employers
 
 *229
 
 in the same occupations to pay an amount of premiums into the compensation fund out of proportion to the protection of the operatives of that particular employer. By the same token it would result in penalizing the employer who pays the larger wage scale.
 

 It is not contended by the Ford Company that Section 1465-53 is unconstitutional on the ground of being discriminatory, but it is contended that the plain provisions of that statute, which require that the number of employes be taken into consideration, has been wholly disregarded.
 

 One of the elements of “degree of hazard” is the number of employes, and this is so obvious that there can be no answer to it. Evidently the Legislature recognized this fact, and therefore provided that the rates of premium should be based not alone upon the total pay roll, but specifically upon “total pay roll and number of employes.” If a different interpretation should be put upon Section 1465-53, it would raise a serious suggestion of unconstitutionality, as denying the equal protection of the laws. It is not contended, and we do not declare, that inequalities of wage scale must be nicely calculated, but it is apparent that there will be a discriminating classification of occupations with respect to the degree of hazard if one employer in a certain occupation is required to pay a premium 50 per cent, in excess of another employer in the same occupation with the same number of employes.
 

 It is not contended by the Ford Motor Company, neither do we declare, that all excess in any wage payment over $18 per week for each employe
 
 *230
 
 should be disregarded in calculating the premium payments, but we do declare that there should be some sliding scale whereby the larger number of employes should be recognized as affecting the degree of hazard.
 

 We are of the same opinion as the Court of Appeals that this case should not be determined upon a demurrer to the amended second defense, and that the courts should have a more elaborate presentation of the facts before this case can be properly disposed of. The mandate of the Court of Appeals requires that the cause should be remanded to the court of common pleas, with instructions to overrule the demurrer to the amended second defense of the answer, and for further proceedings according to law, and its judgment is affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.